```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
```

MARIAN B. MADISON, ET AL                    CIVIL ACTION

VERSUS                                      NO: 07-307

CHALMETTE REFINING, LLC                     SECTION: B(5)

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion for Class Certification under Rule 23 of the Federal Rules of Civil Procedure (Rec. Doc. Nos. 4, 32). The Motion is opposed (Rec. Doc. No. 33). For the reasons stated during the class certification hearing and the foregoing reasons, the Motion to Certify the Class is **GRANTED.**

## BACKGROUND

This case arises out of the escape of petroleum coke dust from the Chalmette Refining, L.L.C. facility in Chalmette, Louisiana. That plant was owned and/or operated by the Defendant to this litigation. On January 25, 2007, Plaintiffs Danette Dominick and Andre Dominick filed a virtually identical class action complaint. The two actions were consolidated on March 1, 2007. The release of coke dust caused the exposure of hundreds of individuals and resulted in irritation type injuries and damages to class members. It also contaminated the personal and real property for the individuals who were property owners within the affected area.

More specifically, Plaintiffs seek to certify a class of personal injury and property damage claimants, which is described

as follows:

> plaintiffs allege that the class shall consist of all persons entities located at the Chalmette National Battlefield in St. Bernard Parish, Louisiana, in the early afternoon of Friday, January 12, 2007 and who sustained property damage, personal injuries, emotional, mental, or economic damages and/or inconvenience or evacuation as a result of the incident.

**FINDINGS AND CONCLUSIONS**

The instant action is certified as a class action under Fed. R. Civ. P. 23 because the proposed class fulfills both the prerequisites enumerated in Rule 23(a) and the additional requirement provided in Rule 23(b). There is no great disparity among class members and no high individual stakes which would be adversely affected by class certification. There is a well defined geographic area (the Chalmette National Battlefield); the proposed class is homogenous (consisting largely of children, teachers, and parents attending an event at the battlefield); there is commonality, numerosity, typicality, adequate representation, and superiority.

The four threshold requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. *Washington v. CSC Credit Servs.*, 199 F.3d 263, 265 (5th Cir. 2000). These prerequisites require the moving party to demonstrate that the size of the class is large enough to make joinder of the parties impracticable (numerosity), that class members share common questions of law and

fact (commonality), that the claims and defenses of the representative parties are characteristic of the claims and defenses of the class members (typicality), and that the representative parties adequately represent the interests of the class as a whole (adequacy). *James v. City of Dallas*, 254 F.3d 551, 569 (5th Cir. 2001). Rule 23 certification also requires a showing that the alleged class falls within one of the three categories in Rule 23(b). *Id.*

**A.   Rule 23(a) Prerequisites for Class Certification**

To fulfill the numerosity requirement of Rule 23(a), Plaintiffs must demonstrate that joinder of all members of the class is impracticable due to the sheer size of the class or other relevant factors. *See James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). Although the practicability of joinder generally depends on the number of class members, other factors including geographic dispersion and the difficulty of identifying potential class members are also relevant in determining whether the numerosity requirement is met. *Murillo v. Musegades*, 809 F. Supp. 487, 502 (W.D. Tex. 1992). In *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999), the Fifth Circuit Court of Appeals affirmed the District Court's finding of numerosity when the estimated size of the proposed class was 100 to

150 members. In addition to size, the court also emphasized that the potential geographic dispersion of class members, due to the nature of their employment, supported the lower court's conclusion that joinder would be impracticable. *Id*. In the Seventh, Eighth, and Eleventh Circuits, the numerosity requirement is presumptively fulfilled when the size of the class exceeds forty members. *Chandler v. Southwest Jeep Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995); *Caroline C. by & Through Carter v. Johnson*, 174 F.R.D. 452, 463 (D. Neb. 1996); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Joinder is impracticable in this case because there was an event being conducted at the Chalmette National Battlefield which was attended by at least hundreds of or perhaps a thousand school children, teachers and parents who were exposed to the coke dust.

The second prerequisite of Rule 23(a) provides that representative parties may sue on behalf of a class only if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). This requirement of "commonality" is a low threshold. *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir. Tex. 1993). A single question of either law or fact that is common to members of the class is sufficient to fulfill this requirement. *James*, 254 F.3d at 570. The release of coke dust was the common issue which triggered all of the Plaintiffs' claims and all

4

affected persons were on the grounds of the Chalmette National Battlefield at the time of release.  Thus, all of the claims of Plaintiffs are consequences of a single incident brought about by the alleged negligence of the single Defendant.

The next prerequisite of Rule 23(a) provides that the claims and defenses available to the representatives of the class should be typical of those belonging to the members of the class as a whole.  Fed. R. Civ. P. 23(a).  The "typicality" prerequisite is intended to ensure that the interests of the named plaintiffs substantially align with those of the absent plaintiffs.  5 James Wm. Moore et al., Moore's Federal Practice § 23.24 (Mathew Bender 3d ed. 2009).  The requirement of typicality is not high or demanding.  *Shipes v. Trinity Indus*., 987 F.2d 311, 316 (5th Cir. 1993).  Typicality requires that the named plaintiffs advance similar or identical legal and remedial theories as those that would be advanced by the absent members of the class if they were to proceed in a parallel action.  *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997).  Typicality is also fulfilled despite factual differences in individual claims as long as the "claims arise from a similar course of conduct and share the same legal theory." *James*, 254 F.3d at 571.

The class members attribute the same wrongful conduct to the Defendant, which is exposure to coke dust released by the Defendant resulting in irritation type injuries, typical to all.

The final prerequisite for class certification under Rule 23(a) is adequacy, which requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Adequacy is necessary to protect the due process rights of absent class members who are nevertheless bound by the judgment. 5 James Wm. Moore et al., Moore's Federal Practice § 23.25 (Mathew Bender 3d ed. 2009). A representative is inadequate if his interests are antagonistic or in conflict with the interests of the absent class members. *Mullen*, 186 F.3d at 625-26. The named Plaintiffs' claims are interrelated with the claims of the absent members to such a degree that the interests of the absent class members would be adequately and fairly protected. The Plaintiffs assert that the Defendant submitted discovery requests to and took the depositions of the named Plaintiffs: Marian Madison, Jodi and Phillip Hebert, individually and on behalf of their children, and Danette Dominick and Andre Dominick, individually and on behalf of their children. These named Plaintiffs were shown to be typical of the class, and capable representative members of the community engaged in occupations, including education and law enforcement. Additionally, the attorneys of the named Plaintiffs have shown that they have the

skills, resources, and ability to prosecute this action on behalf of the proposed class.

Defendant asserts that at least one of the class representatives cannot adequately represent the proposed class. Defendant argues that Philip Hebert is not an adequate class representative. More specifically, Mr. Hebert, was not actually present at the scene of the alleged accident and lacks knowledge about the event and actions of eyewitnesses on the scene. Exhibit A, p. 6. However, the Court finds that he is a parent of a child who was present and should not be disqualified because he may not know every bit of minutia of the surrounding facts.

Defendant additionally argues that Plaintiffs' class is not objectively verifiable. One of the unwritten requirements of Rule 23 is that the class to be certified must be "adequately defined and clearly ascertainable." *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970). A precise definition is essential to identify those entitled to notice and those bound by judgment. *In re Monumental Life Ins. Co.,* 365 F.3d 408, 413 (5th Cir.2004). Plaintiffs proposed class definition is as follows:

> All persons and entities located at the Chalmette National Battlefield in St. Bernard Parish, Louisiana, in the early afternoon of Friday, January 12, 2007 and who sustained property damage, personal injuries, emotional, mental or economic damages and/or inconvenience or evacuation as a result of the incident.

The Court has the right to de-certify a class pending further discovery. At this stage, the circumstances involving a single

7

emission or release are based on objective and ascertainable criteria. The class boundary is the Chalmette National Battlefield in St. Bernard Parish. The class definition turns on the ultimate issue of whether any particular class member "sustained" injury or damages "as a result of" emissions from the Chalmette Refinery on January 12, 2007. In similar cases, class certification has been granted. *See  Amchem Products, Inc v. Windsor,* 521 U.S. 591, 623 (1997); *Watson v. Shell Oil Company*, 979 F.2d 1014 (1992).

Defendant contends that under this type of a class definition, a class member's right to opt out of the class action would be compromised because a judgment would bind those class members who were damaged as a result of emissions by Chalmette Refining. If Chalmette Refining wins at trial, however, there would be no class because its existence is dependent on a finding that emissions from the Chalmette Refining facility damaged Plaintiffs. This would defeat the purpose of class certification. The Court disagrees. In this case, it would save an enormous amount of judicial resources to have the common liability issues tried at one time instead of having these same issues tried multiple times, risking inconsistent verdicts and resulting in lengthy delays, and exorbitant costs as parties wait  to try the same issues of liability.  *Amchem Products, Inc v. Windsor,* 521 U.S. 591, 623 (1997).  The Court finds at this time all of Rule 23(a) requirements have been met.

## B. Rule 23(b) Requirements for Maintaining a Class Action

If the prerequisites of Rule 23(a) are satisfied, then a court will allow a class action to be maintained if it falls within one or more of the three categories provided in Rule 23(b). 5 James Wm. Moore et al., Moore's Federal Practice § 23.40 (Mathew Bender 3d ed. 2009). One such category is provided in rule 23(b)(2), which allows a class action if the opposing party has acted similarly towards all members of the class and injunctive or declaratory relief is appropriate for the class as a whole. Fed. R. Civ. P. 23(b). Although class actions for monetary damages are generally not certifiable under Rule 23(b)(2) there is an exception when monetary damages are incidental to injunctive or declaratory relief. *Parker v. United Steelworkers of Am.*, 642 F.2d 104, 107 (5th Cir. 1981). Monetary damages are incidental as long as they can be calculated using objective criteria and are not dependent on individual determinations of each class member's case. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998).

A class action may also be maintained under Rule 23(b)(3), if the court finds that 1) common issues of law or fact predominate over the issues unique to individual members of the class and 2) if a class action is superior to other forms of resolving the dispute among the parties. Fed. R. Civ. P. 23(b). The predominance element of Rule 23(b) may also be satisfied if the "substantive elements of class members' claims require the same proof for each

class member." *Nichols v. Mobile Bd. Of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir. 1982).

In the instant case, Plaintiffs claim that the common questions of liability clearly predominate. Plaintiffs assert that these questions include determinations of how the dust was released, how much dust was released, the safety precautions which should have been taken to prevent the release, the negligence and fault of the Defendant for the release and many other related questions. Plaintiffs argue that these questions regarding Defendant's duties and actions will be common to all class members and that there are no individual questions which predominate over these overarching common questions.

Defendant asserts that in accordance with the Fifth Circuit, the predominance requirement imposed by Rule 23(b)(3) is far more demanding than the commonality requirement of 23(a), and as such, mandates caution, particularly where individual stakes are high and disparities among class members great. *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003).

The Fifth Circuit's decision in *Steering Committee v. Exxon Mobil Corp.*, involved a litigation that arose following a fire at Exxon Mobil's Baton Rouge Chemical Plant, which area residents claimed exposed them to hazardous substances. 461 F.3d 598, 600 (5th Cir. 2006). The plaintiffs claimed damages for personal injuries and property damages. *Id.* They sought certification,

proposing a class definition similar to the one presented here. *Id*. The district court denied certification after concluding that plaintiffs failed to satisfy Rule 23's typicality, adequacy, predominance, and superiority requirements. *Id*. at 601. The *Steering Committee* plaintiffs argued that because their alleged injuries all arose from a single incident or "common cause," common issues regarding Exxon Mobil's liability predominate over individual issues of causation and damages would predominate over any common questions. *Id.* The district court denied class certification and the Fifth Circuit affirmed. *Id*.

In *Steering Committee*, the Fifth Circuit concluded that although the alleged cause of the injuries was a single accident, the causal mechanism for the plaintiff's injuries—alleged exposure to toxic substances or fear of exposure to toxic substance-- was not so straightforward. *Id*. at 603. The Fifth Circuit found significant that the primary issues left to be resolved would turn on exposure, dose, location, susceptibility to illness, nature of symptoms, type and cost of medical treatment and subsequent impact of illnesses on individuals. *Id*. at 602.

Moreover, the Fifth Circuit recognized that, "in addition to personal injury claims, separate types of proof would be necessary for the property damage, devaluation, and business loss claims." *Id*. The court stated that "where individual damages cannot be determined by reference to a mathematical or formulaic calculation,

11

the damages issue may predominate over any common issues shared by the class," and "where some plaintiffs allege both personal and property injuries, while others allege only one or the other," class certification is likely improper. *Id*.

Defendant alleges, that like the Plaintiffs here, the *Steering Committee* plaintiffs alleged emotional or other intangible injuries that the court found to be too subjective as the damages were individual not a class wide remedy. *Id.* at 602. Defendant contends that these non-physical types of injuries cannot be calculated by objective standards and are not appropriate for class actions. Defendant further argues that like in *Steering Committee,* plaintiffs made the same argument advanced by the Plaintiffs in this case about common issues of liability that could be determined on a class-wide basis and that issue predominated over individual issues. This argument was rejected by the Fifth Circuit holding that "Appellants' argument does no more than prove that some common issues exist across the class." *Id* at 603.

The Fifth Circuit, in *Steering Committee* deferred to the district court in determining that causation and damages would be complex as "one set of operative facts would not establish liability and that the end result would be a series of mini-trials which the predominance requirement is intended to prevent." *Id.* at 602. In this instance, there is one set of
operative facts that would determine liability. Plaintiffs were

either on the battlefield and exposed to the coke dust or they were not. This case only deals with actual exposure and not fear of exposure. This class deals with a narrow window of exposure, in a narrow area, and to a narrow group of individuals. At this stage, Plaintiffs have established that class certification is proper.

Additionally, this case is more similar to *Watson v. Shell Oil*. 979 F.2d 1014 (5th Cir. 1992). *Watson* involved a mass tort claim arising out of an explosion at an oil refinery in which the Fifth Circuit affirmed the district court's grant of class certification. *Id*. In *Watson,* the court was faced with claims by more than 18,000 plaintiffs, and discussed the nearly insurmountable problems of balancing procedural fairness with judicial efficiency in the management of mass tort litigation.

The *Watson* court stated that the commonality requirement focuses on the common issues relevant to claims by or against the class members; it does not require that all issues be common to all parties. *Id*. The claims of all Plaintiffs will require resolution of Chalmette Refining's alleged liability for negligence arising out of the same event, similar injury, with identical theories of recovery in a well-defined area.

The four factors used in determining whether the class action is superior to other methods of adjudication are: The class members' interest in individually controlling their separate

actions; the extent and nature of existing litigation by class members concerning the same claims; the desirability of concentrating the litigation in the particular forum and the likely difficulties in class management. *Turner v. Murphy Oil, USA, Inc.*, 234 F.R.D. 597 (E.D. La. 2006); Fed. R. Civ. Proc. 23 (b)(3).

Here, the factors favor certification. The legal and factual issues involving liability do not differ dramatically from one Plaintiff to the next.

The common liability issues can be tried in a single class action trial with any individual issues of damages reserved for individual treatment. As noted earlier, a class action would save an enormous amount of judicial resources to have the common liability issues tried one time instead of having these same issues tried over and over again, risking inconsistent verdicts and resulting in lengthy delays as parties wait in line to try the same issues of liability over and over again, with exorbitant and escalating costs to all.

In *Castano*, the Fifth Circuit explained the relationship between the predominance and superiority requirements, stating "the greater number of individual issues, the less likely superiority can be established." 84 F.3d at 745, n.19. Further, as the *Castano* court stated, there are other ways that a mass tort can be managed without class certification. 84 F.3d at 747, n. 24. Defendant maintains that the Plaintiffs in this case have not

demonstrated that this mass tort has any exceptional features that warrant departing from the general rule that certification is inappropriate, and treating it as a class action. *Steering Comm.*, 461 F.3d at 604.

More recently, the Supreme Court noted that mass tort cases can be certified under Rule 23. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("Even mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement .... [however, courts should exercise] caution when individual stakes are high and disparities among class members great."). The analysis is whether the class action format is superior to other methods of adjudication. *Id.* When evaluated under those terms, the Court finds that the class action format would be superior to consolidation of individual cases in this instance. The benefits of the class action format in case management and speed of resolution support class certification in this case. Accordingly, the Court finds that the superiority requirement of Rule 23(b)(3) has been met.

### C. Medical Monitoring

Plaintiffs' complaints request the certification of a medical monitoring class. Madison Complaint, p. 9, paragraph 23; Dominick Complaint, p.8, paragraph 24. Plaintiffs have failed, however to

15

meet their burden in establishing why a medical monitoring class should be certified.

The factors that apply on medical monitoring class certification depend on whether plaintiffs seek monetary or equitable relief. For example, if money damages are the primary relief sought by the medical monitoring class, certification must meet the Rule 23)(b)(3) standards. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195-96 (9th Cir. 2001). If the relief sought is a court-supervised program for periodic medical examination, Rule 23(b)(2) generally applies. *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 132 (3d Cir. 1998).

Plaintiffs have failed to show that the proposed medical monitoring class includes members with manifest injuries, rather than merely asymptomatic members. Louisiana law does not recognize medical monitoring claims absent manifest physical or mental injury or disease. La. Civ. Cod. Art. 2315; *Crooks v. Metro Life. Ins., Co.*, 785 So.2d 810, 812 (La. 2001). At this time, the Court declines to grant Plaintiffs' request for a medical monitoring class.

## Conclusion

Accordingly,

**IT IS ORDERED** that Class Certification is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for Medical Monitoring is **DENIED**.

Defendant may seek to appeal this class certification ruling on an expedited basis due to the mobility of children that are involved in this case.

New Orleans, Louisiana this 7th day of June, 2010.

_[signature]_

UNITED STATES DISTRICT JUDGE